UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK D. NEWTON,

            Plaintiff,

v.                                     Case No.: 8:05-cv-514-T-26MSS

JOHN D. RICHARDS and
LISA M. VANN, in their official and
individual capacities as Deputy Sheriffs
with the Hillsborough County Sheriff's
Office,

            Defendants.

_____/

## O R D E R

This cause comes before the Court on Defendants' Dispositive Motion for Summary

Judgment Pursuant to Rule 56, Federal Rules of Civil Procedure, and Supporting Memorandum

of Law with Exhibits (dkt. 12) and Plaintiff's Response in Opposition thereto (dkt. 14).

### SUMMARY JUDGMENT STANDARD

"Summary judgment is authorized if 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla.

1999)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). The initial burden is

on the moving party to show that no genuine issue of material fact exists and that the moving

party is therefore entitled to judgment as a matter of law. The "mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 250. As the nonmoving party, Plaintiff bears the burden of presenting evidence of each essential element of his relevant claims, such that a reasonable jury could find in his favor. Plaintiff must set forth specific facts showing the existence of a genuine issue for trial, instead of merely relying on the allegations in his Complaint. <u>See Fernandez v. Cooper City</u>, 207 F.Supp.2d 1371 (S.D. Fla. 2002). The pleadings of a *pro se* litigant are to be held to a less stringent standard than those drafted by an attorney. <u>See Haines v. Kerner</u>, 404 U.S. 519 (1972). However, a *pro se* litigant must still meet minimal pleading standards. In any pleading, even those drafted by a *pro se* litigant, conclusory allegations and unwarranted deductions of fact are not accepted as true. <u>See Eidson v. Arenas</u>, 837 F.Supp. 1158 (M.D. Fla. 1993). In this case, because Plaintiff fails to show the existence of a genuine issue for trial, Defendants are entitled to the entry of final judgment in their favor.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated on September 11, 2003, when Defendants used excessive and unnecessary force while arresting him. Plaintiff claims to have been pulled over and arrested by Defendant, Deputy John D. Richards, for reasons unknown to him. Plaintiff alleges that he complied with all commands given by Defendant Richards, but that Richards still grabbed his left hand and placed it behind his back in an attempt to handcuff him. By Plaintiff's own admission, as he turned to his right, his right elbow made contact with Defendant Richards' chest. Plaintiff claims that at this point Defendant Richards threw him to the ground and applied an excessive amount of force to his head and ribs. However, Plaintiff asserts that he was unable to see the alleged use of excessive force because his

2

shirt came up over his head.  Plaintiff's only allegation as to Defendant. Deputy Lisa M. Vann. is

that she arrived after the alleged excessive use of force by Deputy Richards and assisted him with

the handcuffing.  Plaintiff claims that as a result of this excessive use of force he sustained the

following injuries: redness and swelling to both sides of his face, two black eyes, and split

cartilage in his left ear.  He sues Defendants in both their individual and official capacities.

## FACTS

The following facts are not in dispute:

1. On February 22, 2003. a Final Judgment of Injunction for Protection Against

Domestic Violence was entered against Plaintiff.  Mary Linda Newton, Plaintiff's

mother. had sought and obtained the injunction.  The injunction was to remain in

effect until March 4, 2004, and it prohibited Plaintiff from going to. in. or within 500

feet of his mother's residence in Lutz, Florida.  (See Dkt. 12, Ex. A, Final Judgment of Injunction

for Protection Against Domestic Violence in Case No. 2003-1542; Ex. B, Plaintiff's Answers to

Defendants' Interrogatories (#7)).

2. On September 11, 2003. Plaintiff violated the injunction by going to his  mother's

residence.  As a result, an emergency call coming from this residence was

received by 9-1-1.  (Id. at Ex. B, Interrogatories (#8 & #9); Ex. C, Deposition of Deputy John D.

Richards (p. 4, 1.8 - p.5, 1.3); Ex. D, Affidavit of Deputy John Richards (#2 & #5)).

3. In an effort to avoid being arrested. Plaintiff fled from his mother's residence after the

9-1-1 call was made.  (See Ex. "B", Interrogatories (#9)).

4. Moments after leaving his mother's residence. Plaintiff was pulled over by

Defendant Richards.  (See Ex. B. Interrogatories (#9): Ex. C, Richards' Deposition (p. 5, ll. 4-

3

22): Ex. D. Richards' Affidavit (#6)).

5. Plaintiff complied with Defendant Richards' initial commands to exit the vehicle, walk to the rear of the vehicle, and place his hands on the trunk of his vehicle. (See Plaintiff's Complaint (Dkt. 1); Ex. C, Richards' Deposition (p. 6, l. 21 - p. 7, l. 5); Ex. D, Richards' Affidavit (#6)).

6. At this point, Plaintiff was placed under arrest and Defendant Richards grabbed Plaintiff's left arm in an effort to handcuff him. (See Plaintiff's Complaint (Dkt. 1); Ex. D. Richards' Affidavit (#6)).

7. After Defendant Richards had control of Plaintiff's left arm, Plaintiff turned to his right and his right elbow made contact with Defendant Richards' chest. (See Plaintiff's Complaint (Dkt. 1)); see also Dkt. 12, Ex. B, Interrogatories (#14); Ex. C, Richards' Deposition (p. 8, l. 25 - p.10, l. 8); Ex. D, Richards' Affidavit (#7)).

8. As a result, Defendant Richards escorted Plaintiff to the ground, Plaintiff landed on his stomach with his hands and arms underneath his body. Defendant Richards continued to attempt to gain control of Plaintiff's arms, but was unable to do so because of Plaintiff's position on the ground. (See Plaintiff's Complaint (Dkt. 1); see also Dkt. 12, Ex. C, Richards' Deposition (p.10, l.12 - p.12, l. 2); Ex. D, Richards' Affidavit (#7 & #8)).

9. Due to his inability to gain control of Plaintiff's arms, Defendant Richards struck Plaintiff with his knee in the rib area once and in the facial area twice. These strikes allowed Defendant Richards to gain control of both arms and effect the arrest. Meanwhile, Defendant Vann arrived, witnessed the physical struggle between the two men and assisted with handcuffing Plaintiff. (See Dkt. 12, Ex. C, Richards' Deposition (p. 11, l.11 - p.12, l. 7); Ex. D,

4

Richards' Affidavit (#9 & #10); Ex. E. Deposition of Deputy Lisa M. Vann (p. 4. l. 7 - p. 6. l. 19); Ex. F. Affidavit of Deputy Lisa Vann (#4 & #5)).

10. Plaintiff was unable to see the incident in question due to his shirt coming up over his head as he was being escorted to the ground.  (See Ex. B. Interrogatories (#12)).

11. The injuries that Plaintiff alleges he suffered during his arrest on September 11, 2003, can be seen from his booking photo. (See Plaintiff's Complaint (Dkt. 1); Dkt. 12, Ex. G, Booking Photo of Patrick David Newton on September 11, 2003.) The injuries are further demonstrated in photographs taken by Corporal Robert L. King, III at the scene of the arrest. (See Dkt. 12, Ex. H, Affidavit of Corporal Robert King. III (#4)).

12. Plaintiff was arrested by Defendant Richards, on September 11. 2003, for the following offenses: Violation of a Domestic Violence Injunction, Battery on a Law Enforcement Officer and Resisting an Officer With Violence. (See id. at Ex. B, Interrogatories (#10); Ex. D. Richards' Affidavit (#11)).

13. An Assailant Control Report was completed by Corporal Robert King, III. in which he found that the actions taken by both Defendants while arresting Plaintiff on September 11, 2003, were appropriate under the circumstances. (See id. at Ex. H, King's Affidavit (#6)).

14. On October 11, 2004, Plaintiff pled guilty and was sentenced to five (5) years incarceration in the Florida State Prison System for Battery on a Law Enforcement Officer based on his September 11, 2003, arrest. (See id. at Ex. B, Interrogatories (#23); Ex. I. Certified Copy of Plaintiff's Conviction in Case No. 03-CF-015879.)

15. The factual basis for Plaintiff's plea of guilty was given by Trisha L. Guerriere,

Esq., Assistant State Attorney, in open court on October 11, 2004, and was agreed

to by Plaintiff. The factual basis consisted of:

> And as to Case No. 03-15879. September 11 of 2003, within Hillsborough
> County, the defendant, Mr. Newton, violated a current domestic violence
> injunction by coming to and remaining at 2534 Vitter [sic] Circle. Injunction was
> served and expired on March 4 of 2004. [sic] This information was, in fact,
> confirmed by the victim who was the defendant's mother. She stated that she
> allowed the son to move back but was now she is scared of him and he is doing
> drugs. [sic] Law enforcement observed the defendant driving southbound on
> Livingston in a red Chrysler. Law enforcement intended to place the defendant
> under arrest when he pushed and struck law enforcement with his right elbow.
> This all occurred within Hillsborough County. Law enforcement can I.D. the
> defendant as the person who committed these crimes."

(See id. at Ex. J, Transcript of October 11, 2004 hearing in Case No. 03-CF-

015879 before the Honorable Anthony K. Black (p. 7, l. 18 - p. 9, l. 4)).

### DISCUSSION

### Defendants' Official Capacity

A suit brought against a government official in his/her official capacity is in effect a suit

against the agency itself. As such, a plaintiff bringing an official capacity suit must show that the

government entity was the moving force behind the alleged constitutional deprivation for the

entity to be liable under 42 U.S.C.A. § 1983. See Kentucky v. Graham, 105 S.Ct. 3099, 3107

(1985). Therefore, in the instant case, Plaintiff must show that the Hillsborough County Sheriff's

Office has a custom or policy that was the moving force behind his alleged constitutional

deprivation. "A policy is a decision that is officially adopted by the municipality, or created by

an official of such rank that he or she could be said to be acting on behalf of the municipality....

A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell

v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). "Only those officials who have

final policymaking authority may render the municipality liable under § 1983." Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). State and local laws determine which officials have final policymaking authority for § 1983 purposes. See Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 737 (1989). Plaintiff's Complaint is devoid of any assertion that a policy or custom of the Hillsborough County Sheriff's Office was the moving force behind his alleged constitutional deprivations. Furthermore, Plaintiff fails to show any Florida Statute or Hillsborough County Ordinance that delegates final policymaking authority to Defendants. Therefore, as a matter of law, Defendants, in their official capacity as Deputy Sheriffs with the Hillsborough County Sheriff's Office, are entitled to the entry of final judgment in their favor as to Plaintiff's Complaint.

### Defendants' Individual Capacity

#### Excessive Force

Plaintiff asserts a claim of an excessive use of force during his arrest on September 11, 2003, in violation of his rights granted under the Eighth Amendment to the Constitution of the United States of America. However, as Defendants correctly assert, case law is clear and well-settled that all claims made against law enforcement officials for allegedly using excessive force while effecting an arrest are properly analyzed only under the Fourth Amendment's objective reasonableness standard. As such, Plaintiff's Complaint is fatally flawed because the rights he seeks to exercise are not granted under the Eighth Amendment, as he alleges. Therefore, as a matter of law, Defendants are entitled to a judgment in their favor as to Plaintiff's Eighth Amendment claims.

Under Florida law, Section 776.05, Florida Statutes, allows an officer to use any force

7

that he or she reasonably believes is necessary when making a lawful arrest of a suspect who is resisting or threatening to resist the arrest; however, Section 776.051 prohibits anyone from using any force to resist a lawful arrest. Furthermore, Section 901.15(1), Florida Statutes, allows for a full custodial arrest for all criminal offenses, including misdemeanors.

"'Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers' ... violates the Fourth Amendment." Graham v. Connor, 109 S.Ct. 1865, 1872 (1989)(citing Johnson v. Glick, 481 F.2d 1028, 1033 (1973)). The right to make an arrest carries with it the inherent right to use some degree of force to effect the arrest. Id. "When an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002). When determining the merits of an excessive force claim, courts must apply an objective reasonableness standard. Specifically, the use of force must be determined from the perspective of what a reasonable officer would have found to be appropriate given the facts and circumstances surrounding the arresting officer. The fact that officers are often forced to make split-second decisions in tense, uncertain and rapidly evolving circumstances must be included in this determination. When applying this standard, all courts should consider the following three factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. Graham, 109 S.Ct. at 1872.

<u>Deputy Lisa M. Vann</u>

In this matter, Plaintiff has asserted that his constitutional rights were violated by Defendant Vann for using excessive force on him while effecting his arrest on September 11,

8

2003. (See Plaintiff's Complaint (Dkt. 1)). However, the record shows that Defendant Vann's only involvement was to assist Defendant Richards with handcuffing Plaintiff. (See id; see also Dkt. 12, Ex. E, Vann's Deposition (p. 4, ll. 7-20); Ex. F. Vann's Affidavit (#5)). As previously stated, the right to make an arrest allows an officer the right to use some degree of force to effect the arrest. Graham, 109 S.Ct. at 1872. Also, Florida law allows officers to make full custodial arrests for all crimes. Plaintiff's assertion that Defendant Vann used excessive force on him is nothing more than a conclusory allegation. Plaintiff has not produced any supporting evidence. Defendant Vann's actions did not go beyond the right to make a full custodial arrest. Therefore, as a matter of law, Defendant Vann, in her individual capacity, is entitled to a judgment in her favor as to Plaintiff's Complaint.

### Deputy John D. Richards

In this matter, Plaintiff has asserted that his federal constitutional rights were violated by Defendant Richards for using excessive force on him while effecting his arrest on September 11, 2003. (See Plaintiff's Complaint (Dkt. 1)). The Eleventh Circuit "has established the principle that the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). Applying the objective reasonableness standard in conjunction with the three factors stated in Graham, the Court finds that Plaintiff's Complaint alleges nothing more than *de minimis* force used by Defendant Richards on September 11, 2003. The record shows that on September 11, 2003, Defendant Richards was arresting Plaintiff for a Violation of a Domestic Violence Injunction. This arrest was lawful under Section 901.15(6), Florida Statutes, because Defendant Richards had probable cause to believe that Plaintiff had just committed the offense of violating

the protective injunction.

The record also shows that at the time in question, Plaintiff was fully aware of the reason for his arrest. (See Dkt. 12. Ex. B, Interrogatories (#9)). It is undisputed that Plaintiff's right elbow made contact with this Defendant Richards' chest during the arrest. This touching reasonably led Defendant Richards to believe that Plaintiff was attempting to resist the arrest as well as putting Defendant Richards in fear for his safety. By this point, Defendant Richards already knew of Plaintiff's lengthy criminal history. This touching gave Defendant Richards probable cause to then arrest Plaintiff for Battery on a Law Enforcement Officer under Section 784.07, Florida Statutes. Furthermore, it is undisputed that once Plaintiff was escorted to the ground, he landed on his arms making it impossible to handcuff him. Defendant Richards then had probable cause to also arrest Plaintiff for Resisting an Officer With Violence under Section 843.01. Florida Statutes.

Under Florida Law, Defendant Richards had the right to make a full custodial arrest because the three charges consisted of a first degree misdemeanor and two third degree felonies. Also, since Plaintiff battered the arresting officer and actively resisted the arrest, Florida law allows Defendant Richards the right to use whatever force necessary to effect the arrest. In this matter, Defendant Richards' force was applied in the following stages: grabbing Plaintiff's arm before the Battery on a Law Enforcement officer; escorting Plaintiff to the ground as a result of the battery; one knee strike to Plaintiff's rib section while he was actively resisting arrest; and two more strikes to the facial area when the first strike was ineffective. Once Defendant Richards had gained control of Plaintiff, no further force was used. "The excessive force standard is based on reasonableness. It looks to the need for force, the amount of force used, and

10

the injury inflicted." Jones v. City of Dothan. 121 F.3d 1456, 1461 (11th Cir. 1997)(citing Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986)). A reasonable officer could find that the *de minimis* force used by this Defendant was appropriate.

Furthermore. and perhaps most importantly, Plaintiff alleges in his Complaint injuries that do not appear in any of the photographs taken soon after his arrest. In particular. Plaintiff alleges that he suffered two black eyes as well as redness and swelling to his entire face. However, the booking photo shows only one black eye and minimal redness and swelling to the left side of his face. (See Dkt. 12. Ex. G, Plaintiff's Booking Photo.) Also, Plaintiff alleges that the cartilage in his left ear split. but the photographs taken at the scene of the arrest show no evidence of this alleged injury. (See id. at Ex. H, King's Affidavit (#4)). Thus. it is clear to this Court that Plaintiff suffered only minor injuries from lawful, justified force used against him by Defendant Richards during his arrest on September 11, 2003.

### Qualified Immunity

"A minimal amount of force and injury ... will not defeat an officer's qualified immunity in an excessive force case." Nolin. 207 F.3d at 1259. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer. 536 U.S. 730 (2002)(quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)). This immunity is meant to protect all government officials from suit except for those who are 'plainly incompetent or knowingly violating the federal law.' See Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002).

To receive the protections provided through qualified immunity, the government official

has the initial burden of proving that he or she was acting within his or her discretionary authority at the time of the alleged wrongdoing. See Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002). In other words, Defendants must show that they were performing a legitimately job-related function through means that were within their power to utilize. See O'Rourke v. Hayes, 378 F.3d 1201 (11th Cir. 2004). The Eleventh Circuit has previously found that a law enforcement officer is acting within his or her discretionary authority when conducting a criminal investigation and making an arrest. See Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990).

Defendants meet their initial burden under the above standard, as the alleged wrongdoings in this matter occurred while they were arresting Plaintiff. Since Defendants meet their initial burden, they are entitled to qualified immunity unless Plaintiff can show that it would be inappropriate to extend the protections provided by qualified immunity in this matter. Plaintiff must establish the impropriety of granting qualified immunity through a two-part inquiry established by the Supreme Court. See Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003). The first prong is for Plaintiff to show the violation of a constitutionally protected right. The second prong is for Plaintiff to show that the right was clearly established at the time in question. See Saucier v. Katz, 533 U.S. 194 (2001).

In this matter, Plaintiff was being lawfully arrested when he engaged in actions that Defendant Richards reasonably found to be a Battery on a Law Enforcement Officer as well as resistence to the arrest. As a result of Plaintiff's behavior, Defendant Richards used an amount of force that was reasonable, minimal, and necessary to gain control of Plaintiff and effect the arrest. The force used caused only minor injuries as evidenced by the photographs in the record. Once Defendant Richards gained control of Plaintiff, the use of force ended. Defendant Vann

did not use any force at all on Plaintiff when assisting Defendant Richards. The Eleventh Circuit has consistently found that application of qualified immunity is appropriate under such circumstances, regardless of the offense committed, type of force used, or amount of force used in each of these cases. See Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004); Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003); Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000); Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997); Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir. 1993). As such, this Court finds that both Defendants meet their respective initial burdens of showing their entitlement to the protections provided through qualified immunity. Specifically, they were both acting within their discretionary authority when effecting Plaintiff's arrest on September 11, 2003. As a matter of law, Defendants are entitled to a judgment in their favor as to Plaintiff's claims of excessive force against them in their individual capacity.

**ACCORDINGLY, it is ORDERED AND ADJUDGED:**

Defendants' Motion for Summary Judgment (Dkt. 12) is granted. The Clerk shall enter judgment in favor of Defendants and against Plaintiff, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida, on November 23, 2005.

/s/_____

**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


COPIES FURNISHED TO:
*Pro Se* Plaintiff
Counsel of Record